GEORGIA,
Camden Co.
OCT. 1808.

Ex parte Clerk
of Camden
County.

CAMDEN COUNTY.

*October Term*, 1808.

*Ex parte* CLERK OF CAMDEN COUNTY.

### CLERKS.

By *Charlton*, Judge.

ON the opening of this court, a difficulty was suggested, which presents itself in the following question :

Whether the " Act to alter and amend the 10th section of the 3d article of the constitution," passed at Milledgeville on the 16th December, 1808, has changed the tenure of office secured to the clerks of the Superior and Inferior Courts, who were elected and commissioned during *good behaviour?*

The general impression is, that this amendatory act requires a re-election of the old clerks, who were chosen *durante bene se gesserint*, and therefore, if *their* commissions are by that act vacated, the proceedings of the Superior Courts must be impeded until new commissions are issued, adapted to the biennial tenure of office.  I say, that this is the general impression, because elections have been held in every county of the state, for clerks of the Superior and Inferior Courts, as directed by the amendatory act.  I would be unwilling as an individual, to oppose my private judgment against a weight of authority so respectable as that which rests upon popular opinion ;  but compelled by official duty to decide, according to what I may conceive to be sanctioned by the *constitution* and the *law*, I shall endeavour to decide in that manner on the present occasion, uninfluenced by the sensations my opinion may probably produce upon the public mind.

The 1st section of the act of the 16th December declares, " That the clerks of the Superior and Inferior Courts shall

GEORGIA,
Camden Co.
Oct. 1808.

Ex parte Clerk
of Camden
County.

be elected on the same day, as pointed out by law, for the election of *other county officers.*"

By the act of February 16th, 1799, Marb. and Crawf. Digest, *other county officers* " are elected on the third Tuesday in October in every second year." This statute and the amendatory act are to be considered as statutes *in pari materia;* whatever therefore is ambiguous in the one, may be explained by the perspicuity of the other. The amendatory act does not specify the *time* for which the clerks of the Superior and Inferior Courts shall hold their respective offices, but as it directs their election to be held the same day, as pointed out by law for the election of " *other county officers,*" it necessarily refers us to the act of the 16th February, 1799, which confers a biennial tenure of office upon all " *other county officers.*" So far then the amendatory act is sufficiently clear and intelligible. That is to say, *in future* the clerks of the Superior and Inferior Courts are to be elected by the people, on the third Tuesday in October in every second year. But the question, the important question, which now offers itself for my decision is, whether this act amendatory of the constitution retrospects to the offices of the clerks of the Superior and Inferior Courts, who were elected during *good behaviour,* and vacates their commissions ?

The 10th section of the 3d article of the constitution, which has been amended and altered by the act of the 16th December, 1808, is in these words: " The clerks of the Superior and Inferior Courts shall be appointed in such manner as the legislature may by law direct, and shall continue in office during *good behaviour.*" Crawf. and Marb. Digest.

Was it the *intention* of the legislature passing the amendatory act, that this section of the constitution should be rendered totally inoperative, as it relates to the tenure of office thus guaranteed to the ancient clerks ? The solution of the question before me must, I humbly conceive, depend entirely upon a critical exposition of the intention of the legislature ; for, let the amendatory act stand alone and unprotected by

GEORGIA,
Camden Co.
OCT. 1808.

Ex parte Clerk
of Camden
County.

the law of the 16th February, 1799, and it will then be impossible to extract from it any principle of definitive and conclusive nature. It does not specify the time for which the clerks shall hold their offices ; it does not require a commission from the executive department. We can only then ascertain the extent to which the legislature intended it should operate, by calling in the aid of the 10th section of the constitution, and the acts of the 16th February, and 4th December, 1799.

The 10th section of the constitution, and the act of the 16th February, render a commission necessary ; and though the amendatory act is silent on this subject, yet the legislature did not certainly *intend* to interfere with this prerogative of the governor. From whatever points we pursue this investigation, *intention* becomes the ruling principle of construction. Resting the interpretation therefore of the amendatory act upon the ground of *intention*, from what data are we to presume that it was the intention of the two succeeding legislatures to vacate the commissions of the ancient clerks ? If their re-election is required by the amendatory act, then the difficulty which now occurs, will occur every second year at this period, and one half of the people of this district will be deprived of the regular administration of justice, as it will be found impracticable to forward commissions in time for the regular sessions of the Superior Court, as far as Liberty county. This argument *ab inconvenienti* is to me irresistible, and repels any construction of the act, unfavourable to the commissions of the ancient clerks.

I take the intentions of the legislature as the polar star of direction in the present investigation ; there are, however, other auxiliary principles equally favourable to the construction I have given to the amendatory act, and to which I shall now briefly advert. Unless an act is declaratory of a common law principle, it cannot retrospect. Our *escheat act* is merely declaratory of the common law, and therefore embraces all antecedent cases of escheated property, that is to say, it has a retrospective operation. In this respect, an

25

GEORGIA,
Camden Co.
Oct. 1808.

Ex parte Clerk
of Camden
County.

act, declaratory of a common law principle, (or of what was the law previous to its statutory form) differs from an *ex post facto*, which can only be applicable to crimes.(*a*)

The amendatory act is not a declaratory statute, and therefore cannot retrospect to the commission of the ancient clerks.

Again : If I mistake not, (for I have here no access to books, and I am obliged to decide immediately on the question before me,) a statute is never construed to operate retrospectively, if such a construction tends to defeat a freehold interest ; and *such an interest* is held under the commissions of the ancient clerks.

Upon these principles, therefore, the commisions *durante bene se gesserint*, stand upon a basis which cannot be subverted. And are these principles to be rejected when it is impossible to find, in the amendatory act, any expressions which militate with their adoption ? I repeat the question which was put by the solicitor general. in the arguments with which he favoured the court. I say, I repeat the question, can a mere implication divest an officer of an appointment derived from the constitution, dependent for its duration upon the moral conduct and good behaviour of that officer, and recognised by all the solemnities of the executive department? If the legislature had intended to vacate the commissions of the old clerks, would they have left so important a principle subject to implication or arbitrary deduction ? I have too high a respect for legislative wisdom to suppose so.

We may yet, in this discussion, proceed a little farther. The maxim *expressio unius est exclusio alterius*, applies with all its force in the construction of a constitutional principle, we ought never to trespass upon the letter of the constitution. It is a compact upon which the fundamental rights of the people repose, and therefore should be as plain and explicit in its language, as those rights are in their nature. A constitutional principle cannot, ought not, to be put afloat upon the

_____

(*a*) See case of *White*, escheator, vs. *R. Wayne*, ante.

sea of construction. Its meaning and operation ought at once to be as obvious to the meanest, as to the most enlightened capacity. Now it is only by a construction, refined and professional, we can draw the inference, or force the implication, destructive under the amendatory act (now a part of the constitution) of the commissions held by the ancient clerks.

*Quacunque via data*, therefore, from whatever point the subject is viewed, whether upon the *intention* of the legislatures, the undisputed rules and maxims which govern the interpretation of statutes, or the plain letter of the amendatory act, which forms a part of the constitution ; upon all these grounds, it appears to me, that the commissions of the clerks, elected under the guarantee of the constitution, have not been vacated. The clerk of this court holds one of these commissions, and I am therefore of opinion, that his re-election does not so far impair the tenure of his office as to render necessary a renewal of his commission. The court will of course proceed in the discharge of its duties.

GEORGIA,
Camden Co.
Oct. 1808.

Ex parte Clerk
of Camden
County.